Keen L. Ellsworth, Esq.
Nevada Bar No. 4981
ELLSWORTH & BENNION, CHTD.
777 N Rainbow Blvd., Ste 380
Las Vegas, NV  89107-1188
Telephone: (702) 767-9987
Facsimile: (702) 920-9871
Email: wynter@silverstatelaw.com
*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SALVATORE MALLIA, JR., an individual, )<br><br>Plaintiff, )<br><br>vs. )<br><br>DRYBAR HOLDINGS, LLC, a foreign )<br>limited liability company; COURTNEY )<br>BARFIELD, an individual; KARRIE )<br>MARTINEZ, an individual; PATRICE )<br>CAMPBELL, an individual; ZENA LONG, )<br>an individual; RENEE ATWOOD, an )<br>individual; and DOES 1 through 100, )<br>inclusive, )<br><br>Defendants. ) | Case No:<br><br>**COMPLAINT<br>AND JURY DEMAND**<br><br>EEOC No: 487-2018-00648 |

**COMES NOW**, Plaintiff, Salvatore Mallia, Jr., an individual, (hereinafter "Plaintiff" or "Mr. Mallia"), by and through his counsel of record, Keen L. Ellsworth, Esq., of the law firm of Ellsworth & Bennion, Chtd., and hereby requests a jury trial relative to all issues triable as follows:

### INTRODUCTION

1.     Plaintiff brings this action against Defendants for violations of the Americans with Disabilites Act of 1990 ("ADA") as amended by the ADA Amendments

Act of 2008, 42 U.S.C. §12101 *et seq.* (the "ADA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII"); and Nevada state law.

2.   The United States Equal Employment Opportunity Commission ("EEOC") alleges Defendant entities, ("Defendant Employer" or "Drybar") did subject Plaintiff to harassment of a sexual nature, harassment in general and discrimination due to Mr. Mallia's sex. Additionally, the EEOC found violations of Title VII of the Civil Rights Act of 1964, as amended and finally violations of the Age Discrimination in Employment Act of 1967, as amended.

## JURISDICTION AND VENUE

3.   This is a civil action seeking damages against Defendants, DRYBAR HOLDINGS, LLC, a foreign limited liability company.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this is a civil action arising under the ADA and Title VII.  This court also has supplemental jurisdiction over Plaintiff's related claims arising under state laws, pursuant to 28 U.S.C. §1367(a).

4.   Venue is proper in this district court under 28 U.S.C. §1391(b)(2), in that a substantial part of the events giving rise to this claim occurred.

## CONDITIONS PRECEDENT

5.   Plaintiff timely filed a charge of discrimination with the EEOC.

6.   On or about November 1, 2018, the EEOC issued Plaintiff a *Notice of Right to Sue.*  (*See Exhibit "1".*)  This Complaint has been filed timely pursuant to the ADEA rules of compliance.  Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA and Title VII.

## PARTIES

7.   Plaintiff (hereinafter "Mr. Mallia") is a male who is over the age of forty-five (45) and resides in Las Vegas, County of Clark, State of Nevada and is a citizen of

Nevada, and is a "person" within the meaning of 42 U.S.C. §2000e(a) and 29 U.S.C. §630(a). At all times relevant to this suit, until his termination in October 2017, Mr. Mallia was employed at Drybar Holdings, LLC in Las Vegas, County of Clark, State of Nevada.

8.　　Mr. Mallia is an employee, as defined by the ADA and Title VII.

9.　　Upon information and belief, Defendant, Drybar Holdings, LLC, is a foreign limited company formed under the laws of California but does business in Las Vegas, County of Clark, State of Nevada. (Hereinafter referred to generally as "Drybar").

10.　　Upon information and belief, Defendant, Courtney Barfield, an individual, is a citizen of the United States and a resident of the State of Nevada. At all times relevant to this action, she was employed by Drybar, and supervised Plaintiff and is a "person" within the meaning of 42 U.S.C. §2000e(a) and 29 U.S.C. §630(a). (Hereinafter referred to as "Barfield").

11.　　Upon information and belief, Defendant, Karrie Martinez, an individual, is a citizen of the United States and a resident of the State of Nevada. At all times relevant to this action, she was employed Drybar, and supervised Plaintiff and is a "person" within the meaning of 42 U.S.C. §2000e(a) and 29 U.S.C. §630(a). (Hereinafter referred to as "Martinez").

12.　　Upon information and belief, Defendant, Patrice Campbell, an individual, is a citizen of the United States and a resident of the State of Nevada. At all times relevant to this action, she was employed by Drybar, and supervised Plaintiff and is a "person" within the meaning of 42 U.S.C. §2000e(a) and 29 U.S.C. §630(a). (Hereinafter referred to as "Campbell").

13.　　Upon information and belief, Defendant, Zena Long, an individual, is a citizen of the United States and a resident of the State of Nevada. At all times relevant

to this action, she was employed by Drybar, and supervised Plaintiff and is a "person" within the meaning of 42 U.S.C. §2000e(a) and 29 U.S.C. §630(a).   (Hereinafter referred to as "Long").

14.     Upon information and belief, Defendant, Renee Atwood, an individual, is a citizen of the United States with her state of residency unknown.   At all times relevant to this action, she was employed by Drybar, and supervised Plaintiff and is a "person" within the meaning of 42 U.S.C. §2000e(a) and 29 U.S.C. §630(a).   (Hereinafter referred to as "Atwood").

15.     Plaintiff does not know the true names and capacities, whether a business entity, governmental, or individual, of those Defendants sued herein as Does 1 through 100, inclusive.   Plaintiff prays leave that when the true names and capacities of said Defendants are ascertained, he may be permitted to insert the same herein with appropriate allegations; however, upon information and belief, Plaintiff alleges each Defendant is legally response for the events and happenings referred to herein and proximately caused damages to Plaintiff, as alleged herein.

16.     Each Defendant is the agent, servant, employee, representative, principal, master, supervisor and/or employer of each of the other Defendants; each Defendant was acting with the service and scope of that agency, employment or other relationship at all times alleged herein.   Relief is sought herein against each and all Defendants, as well as its or their agents, assistants, successors, employees and all persons acting in concert or cooperation with them or at their direction.

## GENERAL ALLEGATIONS

### A.   BACKGROUND

17.     Mr. Mallia is a male, age over forty-five (45), and a United States Veteran, having served with both the United States Marine Corp and the United States Army and

has been honorably discharged for his service with both branches. Mr. Mallia has been VA-rated at a one hundred percent (100%) disability rating, resulting from his service in the military. This information was disclosed to Drybar prior to his employment. He is a certified mixologist and food and beverage manager, consultant and director by trade, having managed several popular bars over the course of his career.

18.    Drybar is commonly described as a "California-based chain of salons that provides a hair styling service known as 'blowouts.'" Drybar also offers bar/drink services. Drybar has at least three (3) locations in Las Vegas, with the "Miracle Mile" location being its "flagship location" and claims to have almost one hundred (100) locations in multiple states and countries.

19.    Mr. Mallia began working for Drybar (at the "Miracle Mile" shop/location), on or about August 24, 2017 in the position of "Bar Manager". He was formally offered the position in writing, by Barfield on August 22, 2017. Drybar's bar operations were experiencing significant financial loss. They informed Mr. Mallia no one at Drybar had the knowledge or experience necessary, nor did they have knowledgeable people in place to manage their bars in Las Vegas. The management were primarily familiar and experienced only with the salon-side of Drybar and they wanted an experienced and knowledgeable Bar Manager.

20.    Mr. Mallia was originally interviewed by the General Manager at the time, Ellie Greene (female) (no longer with the company), and also President of the Company, Danielle Bruno (female) (also no longer with the company).

21.    Greene and Bruno informed Mr. Mallia he would have the ability to manage all bar operations and the oversight and control of same. They were very specific with what they wanted and explained to Mr. Mallia they wanted to utilize his

many years of bar management expertise to increase profits and decrease liquor costs for the bar, and also to set up promotions to enhance the bar side of the company.

22.     In the short time-period Mr. Mallia was employed with Defendant, he successfully raised sales, streamlined liquor costs, and saved Drybar thousands of dollars.

**B.     PROBLEMS BEGIN**

23.     Mr. Mallia had a great working relationship with both his General Manager, Ellie Greene and President, Danielle Bruno.  Unfortunately, Bruno left for unknown reasons shortly after his employment began.  Defendant Barfield then took over Bruno's position in or about mid-August 2017.

24.     Thereafter, Greene was forced to quit by various middle management personnel (including Defendant Martinez), after salon-side employees engaged in a "UFC-style fight", which took place at the front desk of the Miracle Mile shop in front of customers during business hours.  There is video footage of the incident.

25.     Defendants Barfield and Martinez were upset with Greene for not getting in the middle of the fight to break it up (while pregnant and at-risk).  Green explained she was pregnant and it was thereafter that Barfield began making Greene miserable to the point she told Greene she should either resign or she would be fired.

26.     After Greene left, the two (2) salon managers (Hunter and Eddy) took over running the salon in the temporary absence of a General Manager, taking their directions from the District Manager, Defendant Long.  This is important because Hunter and Eddie also assisted Mr. Mallia on the bar-side in covering the first thirty (30) minutes to an hour after the shop first opened each business day until Mr. Mallia arrived for his established shift hours.

///

## C.   MIS-MANAGEMENT BY MIDDLE MANAGEMENT

27.   Approximately one (1) week after the departure of Greene, Defendant Long (a District Manager for nine (9) different Drybar locations) and another General Manager, Defendant Williams (who was managing another Drybar location in Washington State), showed up to the Miracle Mile location on Thursday, September 28, 2017.  Their arrival has been described by multiple employees to be "Spartan-style", with the two (2) storming into the store and immediately taking over, yelling at people, barking orders, and instructing salon-side managers, Hunter and Eddy, to take the next two (2) days off.

28.   At this time, Mr. Mallia was on his thirteenth (13th) straight day of work with no break.  Both Long and Williams knew (or should have known as managers) that Hunter and Eddy covered the bar for Mr. Mallia as set forth above.  That same night, after the shop closed, Long and Williams went through the store with a "fine-toothed" comb.  Mr. Mallia stayed on to assist them and ultimately ended up working nearly thirteen (13) straight hours that shift, staying until Long and Williams finally closed the store for the evening.  Long and Williams left that night with Long instructing Mr. Mallia to come in the next day (Friday) at 11:30am.

29.   The next morning (Friday, September 29, 2017), at 10:45am, while Mr. Mallia was getting ready for work, Long telephoned Mr. Mallia.  Long immediately began yelling and screaming at Mr. Mallia over the phone, berating Mr. Mallia, yelling that he had "dropped the ball" and didn't do his job and that he should have the bar covered.  Mr. Mallia tried to explain to Long that Hunter and Eddy covered the bar each day until his arrival.

30.   Instead of listening, Long continued to overtly yell and scream at Mr. Mallia, despite him asking her to stop and be professional.  Long continued screaming

and raised her voice even louder.  Mr. Mallia finally stated he needed to get ready for work and hung up the phone.

31.    Mr. Mallia was shaken and immediately called Defendant, Renee Atwood (female), Drybar's Human Resources Director and explained to her exactly what had just occurred.  Atwood stated she would look into it and promised to keep everything confidential between Mr. Mallia and herself.

**D.    THE WRITE-UP & BLATANT SEXUAL HARASSMENT**

32.    Later that morning, and approximately one (1) hour after Mr. Mallia's shift began, Long and Williams pulled Mr. Mallia into a tiny, closet-sized back room office (with security camera coverage) to inform him they were issuing him a disciplinary "write-up", and Williams began to do so while Long proceeded to berate him again. They also told Mr. Mallia they had "already spoken with Renee Atwood, who had told them everything he had told her on the phone", just an hour before.

33.    Mr. Mallia was extremely uncomfortable in the tight office space and he sat in the corner with his arms at his sides and listened to both Long and Williams berate him for allegedly "being late" and not having the bar covered and for a prior incident they tried to allege occurred.  Mr. Mallia did not agree with the "write-up" and therefore refused to sign it, attempting again to explain to Long and Williams why he would not sign the "write-up".  Long began screaming at him yet again.  It was at this time that Williams (knowing they were on video camera in the tiny space), began pinching Long to get her to be quiet.  After Mr. Mallia expressed his disagreement with the "write-up" and his refusal to sign the document, Williams SIGNED Mr. Mallia's NAME on the document.

34.   The "write-up" authored (and signed) by Williams, also mentions that earlier in the week, Mr. Mallia had left the "bar unattended", which Mr. Mallia disputes. Williams and Long refused to provide the circumstances behind that alleged instance.

35.   Drybar has established <u>written</u> policies and procedures for disciplinary actions, which require progressive discipline. <u>First</u>, is a verbal warning; <u>Second</u>, there is a "first" written write-up; <u>Third</u>, a "second" written write-up and; <u>Fourth</u>, there is a "final" written write-up which ultimately leads to termination. This particular "write-up" (Mr. Mallia's one and only), was marked as Mr. Mallia's "final" write-up. Mr. Mallia had no prior disciplinary action against him. This was a violation of Drybar's own company policies and procedures regarding discipline.

36.   Finally, and most disturbing of all, on the "write-up", Campbell wrote:

> "Nothing is **sexier** than honesty & humility because Sal did
> not accept responsibility and was not open to feedback."

This written comment about being "sexier" was very disturbing, unsettling and embarrassing to Mr. Mallia, who was already being mistreated and demeaned by <u>strictly female</u> management, who were in positions of power over Mr. Mallia.

37.   Toward the end of the meeting with Long and Campbell, Long handed Mr. Mallia the "write-up" and then blatantly and in a bragging manner, informed Mr. Mallia that Renee Atwood at Human Resources had, instead of keeping everything "confidential" as she had promised, divulged to Long *everything* Mr. Mallia had told Atwood just that morning, less than two (2) hours before.

### E.   REFUSAL TO ACKNOWLEDGE VETERAN DISABILITY STATUS

38.   As noted above, Mr. Mallia is a U.S. Veteran (two branches with two honorable discharges) and he is rated one hundred percent (100%) disabled. Since his hiring and despite Mr. Mallia's many requests, Drybar refused to enter into the proper contracts and channels to have liquor delivered to Drybar, as is the proper way to do so

in the industry.  Mr. Mallia hurt his back while lifting liquor cases out of his car, which he had to go and pick up for Drybar directly from the supplying liquor company because Drybar continually failed and refused to establish the proper accounts with any liquor companies.  This made Drybar a "cash on delivery" only operation.  So, when the check for liquor from Drybar's headquarters did not arrive to the liquor company, the bar was running out of liquor.  To solve the problem Drybar created, they told Mr. Mallia to "go pick it up", referring to the liquor.

39.    Unfortunately, during the liquor pick-up Mr. Mallia injured his back so badly he had to take pain mediation just to come to work the next day.  The injury occurred near the end of his shift, and he left at 6:30 pm to go to the doctor because he was in so much pain.  Only thirty (30) minutes early.

40.    Mr. Mallia even immediately provided his doctor's notes to Human Resources at Drybar.  Yet still, Mr. Mallia was still issued the improper and unsupported "write-up".

F.    **HUMAN RESOURCES FAILS TO PROPERLY MANAGE**

41.    It is a commonly known fact at Drybar that Atwood, a Human Resources Director, is very close, long-term friends with the other female Defendants herein.  In fact, most middle management employees are.  And they are all women.

42.    These women are all hired for their positions based on friendship with upper management, the owner(s), and each other; not based upon their experience, knowledge or ability to properly manage.

43.    It is also common knowledge amongst employees that instead of keeping employees' information and complaints confidential, which Atwood receives from any Drybar employees (as is the purported corporate policy), that all such information and

complaints are consistently and quickly reported back to the middle management employees, whom are usually the ones being complained about.

44. There are hundreds of complaints from numerous employees directed at middle management employees of Drybar, which are publicly available online. A lot of those complaints are aimed at even the Defendants herein. And they are all consistently the same complaints as those herein (sometimes worse) – all directed at middle-management, all women, all whom lack the knowledge or ability to properly manage employees.

## G.   FURTHER MISMANAGEMENT AND RETALIATION POST "WRITE-UP"

45. After the "write-up" incident, and his complaints lodged with Human Resources, Mr. Mallia experienced increased hostility and abuse from Defendants. As the days progressed, Mr. Mallia was not given the ability to do his job. Every move Mr. Mallia made on behalf of the bar (which he had been told on hiring he would have full autonomy over), was either put on hold or micro-managed to the point Mr. Mallia had no ability to perform the job he was hired to do and had been told he was expected to do. Mr. Mallia felt he had a target painted on his back and he was being set up to fail and for termination.

46. This also created problems throughout the store in a general sense. Yet, Mr. Mallia was consistently told (as were other employees) that it was his "job" to do other "jobs" as middle management "saw fit". At one point he was doing the job of three (3) people in acting as the bartender, the manager, and the server because Defendants were refusing to allow Mr. Mallia to do the job he was hired to do as a *Manager*. Instead, he was doing the jobs of at least three (3) people he was originally promised he would be allowed to hire.

47.     At one point Mr. Mallia made the suggestion of hiring male model cocktail servers to cater to the largely female based customers at the salon, but he was told that would be "discrimination". Since Drybar is largely female managed and operated, this made no sense and it became clear through various comments made that Drybar was not interested in the hiring of any men.

## H.   CLAIMS OF AGGRESSION

48.     It was soon after the write-up when Long approached Mr. Mallia and told him he would be meeting with Defendant Barfield (whom also happens to be Long's good friend and neighbor outside of work). A lunch meeting was set up between Long, Williams, Barfield and Mr. Mallia. Mr. Mallia audio-recorded the entire meeting.

49.     From the very beginning and outset of this almost two (2) hour lunch meeting, you can hear the condescending, aggressive and hostile tone which is taken toward Mr. Mallia by the three (3) women, particularly by Barfield, all of whom held superior positions to Mallia.

50.     Each of the women expressed hostility, aggression, and animosity toward Mr. Mallia. He felt ambushed. At one point during the lunch meeting, Long was even making faces at Mr. Mallia and tapping Martinez' shoulder making faces and saying "see, see, what did I tell you about him?" Her behavior was so bad at one point that Barfield told Martinez to leave the table.

51.     There were several very interesting and poignant instances during the meeting of Barfield acting very aggressively toward Mr. Mallia, including harshly swearing several times, pounding her fists on the table and generally being hostile, antagonistic and abusive. The recording of this meeting is proof.

52.     It was also during this meeting wherein clear admissions were made by Defendants (again, on the recording), that Drybar was violating FLSA laws regarding

tipped employees.   They even admitted the tips received by employees were being retained by Drybar and/or being utilized to pay Drybar's employees' wages instead, or simply kept as outright profit.

53.   After the meeting was over, a written statement obtained from an employee at Drybar (and her testimony) will prove that Barfield, Martinez and Long all returned to Drybar after the lunch (Mr. Mallia was told to go home) and were having drinks at the salon's bar, while coordinating their stories for the purposes of generating their written report to "corporate".  This employee's statement further proves the three (3) women were attempting to "get their stories straight" in order to further their coordinated attack upon Mr. Mallia in order to have him dismissed.  They would later try to claim it was Mr. Mallia whom was being "aggressive" at the meeting, when that was clearly not the case at all, as is proven by the recording.

54.   It was within a week or two of this lunch meeting that Mr. Mallia was ultimately terminated.

## I.   FEDERAL TIP COMPLIANCE VIOLATIONS / FLSA

55.   Throughout his employment at Drybar, Mr. Mallia observed Drybar was illegally and improperly withholding the tips received by bartenders and other employees from shop customers, and Drybar was utilizing the tips for the purposes of paying their employees' wages or was simply keeping the profits for itself.

56.   In fact, as stated hereinabove, at the same lunch meeting, when Mr. Mallia raised the issue of the tip compliance violations, Barfield didn't seem to know what was going on or have any knowledge of laws with regard to employees' tips, and it was then that Defendant Martinez quietly admitted to Barfield - in the presence of Mr. Mallia at the lunch meeting - that this is the way that Drybar handles its tips.  Again, this was audio-recorded.

**J.   DAMAGES TO PLAINTIFF CAUSED BY DRYBAR**

57.   Since Mr. Mallia's termination, he has struggled financially, has been delinquent on his home mortgage payments, and due to comments made by Drybar to potential future employers, has been struggling to obtain employment in Las Vegas.

58.   Middle-management even went so far as to inform remaining employees they were not allowed to even mention Mr. Mallia's name, unless they wanted to be fired.  Defendants also spread false rumors and gossip amongst employees claiming Mr. Mallia was fired because he was "embezzling" the tips and other income – obviously a cover-up for their own admitted Federal Tip Compliance law violations.  Of course, none of the gossip is even remotely true and has hurt Mr. Mallia's reputation severely in his industry.

59.   The events involved herein have also caused Mr. Mallia great mental and emotional pain and anguish and great economic harm and loss.  He has had to seek psychiatric treatment to assist him in resolving these issues.

**FIRST CAUSE OF ACTION**

**(DEFENDANTS' UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFF DUE TO HIS DISABILITY)**

60.   The allegations of the foregoing paragraphs are incorporated herein by reference.

61.   Title I of the ADA prohibits covered entities from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment.  42 U.S.C. §12112(a).

62.   Defendants discriminated with malice or reckless indifference against Mr. Mallia by, among other improper actions, terminating him from his job as Bar Manager

at Drybar after they "wrote him up" (skipping the progressive discipline process set forth in their own policies and procedures), for not being able to do a job while he was injured as a result of his Veteran's status approved 100% disability, which Drybar KNEW about.

63.    This injury was caused by Drybar when they ultimately refused to allow Mr. Mallia to have the liquor delivered in the appropriate and proper manner for the industry, and instead required Mr. Mallia to pick-up heavy cases of liquor for the shop, which caused him further injury and to miss work.

64.    Mr. Mallia has suffered, and continues to suffer, damages and other harm as a direct result of Defendants' discrimination, including financial and emotional distress, and humiliation.

65.    Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

### (DEFENDANTS FAILED TO PROVIDE A REASONABLE ACCOMMODATION)

66.    The allegations of the foregoing paragraphs are incorporated herein by reference.

67.    The ADA requires employers to provide reasonable accommodations to employees with disability, unless doing so would pose an undue hardship.  A reasonable accommodation is assistance to a position or workplace that will enable an employee to do the job, despite having a disability.

68.    Mr. Mallia specifically advised, consulted and requested Drybar middle-management to go through the proper channels in having the liquor accounts properly set up, ordered and subsequently delivered, to Drybar for its bar services on numerous

occasions. It refused to do so and it refused to accommodate Mr. Mallia, thus requiring him to pick-up the liquor himself for the bar, causing further injury to Mr. Mallia.

69. Mr. Mallia's request was a reasonable accommodation and Drybar management was aware of Mr. Mallia's difficulties and disabilities. Drybar's management failed to engage Mr. Mallia in good faith to provide a reasonable accommodation.

70. Instead, Drybar refused to acknowledge the injury and the subsequent doctor's notes obtained by Mr. Mallia and provided to Drybar's Human Resources Department and instead, wrote him up for leaving the bar unattended, and in the process, violated their own policies and procedures for disciplinary action.

71. Mr. Mallia has suffered damages because of Defendants' violations outlined herein, which required Mr. Mallia to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of damages and reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION

### (DEFENDANTS' RETALIATED AGAINST PLAINTIFF IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)

72. The allegations of the foregoing paragraphs are incorporated herein by reference.

73. Under the ADA, a company cannot retaliate against an employee who requests a reasonable accommodation and who then faces an adverse employment action because of his request and disability. Here, Mr. Mallia requested Drybar abide by the industry standards in having the bar's liquor accounts set up and liquor properly delivered to the shop. They refused to cooperate or allow Mr. Mallia to do the job he was hired to do, thus requiring Mr. Mallia to perform physical actions which caused

further injury to him; injuries he received from his military service, which Drybar was aware of.

74.     In violation of the law, Drybar management moved forward to terminate Mr. Mallia's employment rather than to have to provide the requested reasonable accommodation.   The ONLY reason Mr. Mallia missed any work was due to his disabilities and condition, which was aggravated by the work environment at the shop. This situation could have easily been changed by Mr. Mallia's suggestions or simply by just allowing Mr. Mallia to do his job.   But female middle managers didn't want to relinquish any control, and certainly not to a man.

75.     Later, when Mr. Mallia sought employment at other locations, Drybar management advised those companies not to hire Mr. Mallia given their alleged "problems" with him and even worse, defamed him to other Drybar employees with outrageously false allegations.

76.     Mr. Mallia has suffered, and continues to suffer, harm as a direct result of Defendants' retaliation against him, including financial and emotional distress, and humiliation.

77.     Defendants intentionally violated Mr. Mallia's rights under the ADA with malice or reckless indifference and, as a result, are liable for punitive damages.

78.     Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

///


///

## FOURTH CAUSE OF ACTION

### (DISCRIMINATORY DISCHARGE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND NEVADA REVISED STATUES §613.330)

79.     The allegations of the foregoing paragraphs are incorporated herein by reference.

80.     Mr. Mallia was qualified for his position when Defendants fired him.

81.     Defendants fired Mr. Mallia only after he reported, to Drybar's Human Resources, problems with management.   Mr. Mallia was terminated because he took approximately thirty (30) minutes off of work to seek immediate medical treatment for an injury caused at work, but only after Mr. Mallia reported the incident.   Defendants took this further by creating a hostile work environment and ultimately setting Mr. Mallia up to fail in trying to do the job he was hired to do for Drybar as the Bar Manager.

82.     Plaintiff requested reasonable accommodation for the disabilities he suffers from as a Veteran, and Drybar refused to cooperate or be reasonable.

83.     Defendants' alleged reason(s) for terminating Mr. Mallia's employment is pretextual and baseless.

84.     Mr. Mallia has suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

85.     Defendants intentionally violated Mr. Mallia's rights under the ADA and Nev. Rev. Stat. §613.330, with malice or reckless indifference and, as a result, are liable for punitive damages.

86.     Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

### FIFTH CAUSE OF ACTION

### (DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII AND IN VIOLATION OF NEVADA REVISED STATUTES §613.330)

87.     The allegations of the foregoing paragraphs are incorporated herein by reference.

88.     The individual Defendants' physical, sexual and verbal intimidation of Mr. Mallia constituted harassment.

89.     Mr. Mallia was subjected to this harassment on the basis of his sex. The vast majority of Drybar employees are female. Most, if not all, middle-management employees are female. Many other male employees who were employed in the past have reported similar hostility and harassment. Drybar refused to allow Mr. Mallia to hire any male cocktail servers for the bar based upon Mr. Mallia's suggestion as the Bar Manager.

90.     Members of the opposite sex are not generally subjected to similar harassment. This harassment thus constituted discrimination on the basis of sex/gender.

91.     This harassment had the effect of creating an intimidating and hostile work environment.

92.     This harassment was severe and/or pervasive and interfered with the terms, conditions, and/or privileges of Mr. Mallia's employment.

93.     On or about September 29, 2017, Mr. Mallia reported this harassment and hostility to Drybar's Human Resources Department.

94.     On information and belief, other employees have reported similar harassment conduct by Defendants to Drybar's Human Resources Department.

95.    Defendants were aware of Mr. Mallia's complaints and Drybar's Human Resources Department did nothing about it, and instead, chose to report such confidential complaints back to the very people being complained about and then did not take adequate action to address the harassment and hostility, nor prevent continued harassment and hostility.

96.    Mr. Mallia has suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

97.    Defendants intentionally violated Mr. Mallia's rights under Title VII and Nev. Rev. Stat. §613.330, with malice or reckless indifference and, as a result, are liable for punitive damages.

98.    Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

### SIXTH CAUSE OF ACTION

### (RETALIATION IN VIOLATION OF TITLE VII AND

### NEVADA REVISED STATUTE §613.340)

99.    The allegations of the foregoing paragraphs are incorporated herein by reference.

100.   Mr. Mallia was qualified for his position when Defendants fired him.

101.   Defendants fired Mr. Mallia only after he reported the Defendant for screaming at him on the telephone and for the wrongful "write-up", the harassment (both generally and of a sexual nature), and the hostility to Human Resources, and brought-up the federal tip compliance violations with middle management.

102.   Defendants' alleged reasons for terminating Mr. Mallia's employment is pretextual and baseless.

103.   Defendants' termination of Mr. Mallia constitutes unlawful retaliation against Mr. Mallia in violation of his rights under Title VII and Nev. Rev. Stat. §613.340.

104.   Mr. Mallia has suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

105.   Defendants intentionally violated Mr. Mallia's rights under Title VII and Nev. Rev. Stat. §613.340, with malice or reckless indifference and, as a result, are liable for punitive damages.

106.   Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

### SEVENTH CAUSE OF ACTION

### (NEGLIGENT HIRING IN VIOLATION OF NEVADA LAW)

107.   The allegations of the foregoing paragraphs are incorporated herein by reference.

108.   Defendants owed a duty of care to Mr. Mallia.

109.   Defendants breached that duty by hiring, and continuing to employ, the individual Defendants herein, even though Drybar knows, or should have known of the individual Defendants' propensities for harassment and hostility.   It is common knowledge amongst numerous Drybar employees.

110.   Defendants' breaches of that duty were the legal cause of Mr. Mallia's injuries.

111.    As a direct and proximate result of Defendants' actions, Mr. Mallia has suffered damages, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

112.    Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

### EIGHTH CAUSE OF ACTION

### (NEGLIGENT SUPERVISION AND TRAINING IN VIOLATION OF NEVADA LAW)

113.    The allegations of the foregoing paragraphs are incorporated herein by reference.

114.    Defendants owed a duty of care to Mr. Mallia to use reasonable care in the training and/or supervision of the individual Defendants herein, to ensure they were fit for their positions.

115.    Defendant Drybar, breached that duty by failing to exercise reasonable care in the training and/or supervision of the individual Defendants herein.

116.    Defendants Drybar's breaches of that duty were the legal and proximate cause of Mr. Mallia's injuries.

117.    As a direct and proximate result of Defendants' actions, Mr. Mallia has suffered damages, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

118.    Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

///

///

## NINTH CAUSE OF ACTION

## (NEGLIGENCE PER SE IN VIOLATION OF NEVADA LAW)

119.    The allegations of the foregoing paragraphs are incorporated herein by reference.

120.    Defendants owed a duty of care to Mr. Mallia as defined by Nev. Rev. Stat. §613.330.

121.    Plaintiff is among the class of persons Nev. Rev. Stat. §613.330 was designed to protect.

122.    Defendants breached that duty by violating Nev. Rev. Stat. §613.330, which constitutes negligence as a matter of law.

123.    Defendants' breaches of that duty were the legal cause of Plaintiff's injuries.

124.    As a direct and proximate result of Defendants' actions, Mr. Mallia has suffered damages, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

125.    Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

## TENTH CAUSE OF ACTION

## (CIVIL CONSPIRACY IN VIOLATION OF NEVADA LAW)

126.    The allegations of the foregoing paragraphs are incorporated herein by reference.

127.    Defendants formed a malicious combination.

128.    Defendants' malicious combination included two (2) or more persons.

129.     Through Defendants' malicious combination, there existed an unlawful act independent from the civil conspiracy – namely, the ADA violations, Title VII violations, Nev. Rev. Stat. §613.330 violations, and negligence alleged in this *Complaint*.

130.     As a direct and proximate result of Defendants' actions, Mr. Mallia has suffered damages, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

131.     Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

### ELEVENTH CAUSE OF ACTION

### (HOSTILE WORK ENVIRONMENT)

132.     The allegations of the foregoing paragraphs are incorporated herein by reference.

133.     Defendants subjected Mr. Mallia to a hostile, intimidating, and offensive work environment by subjecting him to hostility, harassment derived from his sex and gender, initiating a campaign of retaliatory conduct against him, and by denying him the ability to do the job he was hired for, despite his qualifications.

134.     Defendants harassment, hostile comments and actions, intimidating work environment and adverse actions against Mr. Mallia occurred with frequency.

135.     Defendants' conduct was so severe and pervasive that it significantly altered the condition of Mr. Mallia's employment and affected his psychological well-being.

136.     In addition, the conduct was sufficiently severe and pervasive to create an abusive work environment, and unreasonably interfered with Mr. Mallia's work.

137.    Defendants further intentionally subjected Mr. Mallia to harassment and discriminatory conducted based on his disabilities.

138.    As a direct and proximate result of the breach of its duties owed to Mr. Mallia to prevent such conduct, Defendants, its agents, servants or employees unlawfully and willfully subjected Mr. Mallia to discriminatory treatment and retaliation in violation of Nevada State Law.

139.    As a result of Defendants' conduct, Mr. Mallia has been damaged in an amount in excess of $10,000.00 and has lost wages in excess of $50,000.00.

140.    Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

## TWELFTH CAUSE OF ACTION

### (AGE DISCRIMINATION IN EMPLOYMENT)

141.    The allegations of the foregoing paragraphs are incorporated herein by reference.

142.    Mr. Mallia is informed and believes and therefore alleges that Drybar employs twenty (20) or more employees.

143.    At the time Mr. Mallia was hired by Drybar as its Bar Manager, Mr. Mallia was forty-four (44) years old.

144.    Despite his qualifications for the position, Mr. Mallia was improperly discharged and replaced by a substantially younger individual with no better credentials than those possessed by Mr. Mallia.

145.    Mr. Mallia's discharge by Defendants is in violation of public policy of the State of Nevada.

146.    As a result of Defendants' violation of 29 U.S.C. §621 *et seq.*, and Nev. Rev. Stat. §613.310 *et* seq., Title VII of the Civil Rights Act of 1964, and and the Age Discrimination in Employment Act (ADEA) of 1967, in that Defendant was a member of a protected age group (forty years of age or older), Mr. Mallia has suffered injury in the form of lost income during the period of forced unemployment and lost income for future employment and is therefore entitled to recovery of aforesaid lost income, plus interest.

147.    As as result of Defendants' willful violation of 29 U.S.C. §621 *et seq.*, and Nev. Rev. Stat. §613.310, *et seq.*, Mr. Mallia is entitled to liquidated damages.

148.    Mr. Mallia has been required to engage the services of counsel to prosecute this action, and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

## THIRTEENTH CAUSE OF ACTION

### (HOSTILE WORK ENVIRONMENT)

149.    The allegations of the foregoing paragraphs are incorporated herein by reference.

150.    During his employment with Drybar, Mr. Mallia was subjected to conduct of a hostile and/or abusive nature by Defendants and/or their agents, including but not limited to: written comments of a sexual nature on the wrongful and unsubstantiated "write-up"; being sworn and screamed at by middle management female employees; not being allowed to perform his job duties or allowed to exercise any control to do so; and more, thereby creating an environment that a reasonable person would find hostile and/or abusive.

151.    The hostile and/or abusive conduct was unwelcomed and created an environment that a reasonable person would find hostile and/or abusive.

152.    The hostile and/or abusive conduct caused Mr. Mallia to be concerned about his continued employment with Drybar.

153.    As a result of Defendants' violation of 42 U.S.C. §2000e *et seq.*, and Nev. Rev. Stat. §613.310 *et seq.*, Mr. Mallia has suffered injury in the form of lost income during the period of forced unemployment and lost income for future employment and is therefore entitled to recovery of aforesaid lost income, plus interest.

154.    Defendants intentionally, maliciously and/or recklessly discriminated against Mr. Mallia, thereby entitled him to compensatory and/or punitive damages.

155.    Mr. Mallia has been required to engage the services of counsel to prosecute this action, and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

### FOURTEENTH CAUSE OF ACTION

### (BAD FAITH OR TORTIOUS DISCHARGE)

156.    The allegations of the foregoing paragraphs are incorporated herein by reference.

157.    On or about August 24, 2017, Mr. Mallia entered into an employment contract with Defendants either express or implied, pursuant to which Mr. Mallia was hired as Drybar's "Bar Manager" for an indefinite term and could be terminated for cause only or in accordance with established policies and procedures.

158.    Defendants breached the employment contract and acted in bad faith by terminating Mr. Mallia without cause and/or not in accordance with Drybar's established policies and procedures.

159.    Defendants improperly, and without cause or justification, dismissed Mr. Mallia.

160.    Defendants' conduct was outrageous and in violation of public policy.

161.    As a result of Defendants' unlawful actions, Mr. Mallia has suffered injury in the form of lost income during the period of forced unemployment and lost income for future employment and is therefore entitled to recover of aforesaid lost income, plus interest.

162.    Defendants acted intentionally, maliciously and/or recklessly, thereby entitling Mr. Mallia to compensatory and/or punitive damages.

163.    Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorneys' fees and costs.

### FIFTEENTH CAUSE OF ACTION

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

164.    The allegations of the foregoing paragraphs are incorporated herein by reference.

165.    Defendants' conduct was extreme and outrageous.

166.    Defendants acted with the intention of or reckless disregard for causing emotional distress.

167.    Mr. Mallia has suffered severe or extreme emotional distress as a proximate cause of Defendants' conduct.

168.    As a result of Defendants' unlawful actions, and the resulting emotional distress, Mr. Mallia has also suffered injury in the form of lost income during the period of forced unemployment and lost income for future employment and is therefore entitled to recovery of aforesaid lost income, plus interest.

169.    Defendants acted intentionally, maliciously and/or recklessly, thereby entitling Mr. Mallia to compensatory and/or punitive damages.

170. Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

### SIXTEENTH CAUSE OF ACTION

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

171. The allegations of the foregoing paragraphs are incorporated herein by reference.

172. Defendants had a legal duty to exercise reasonable care in their employment practices.

173. Defendants breached that duty by acting improperly, and without cause or justification, in dismissing Mr. Mallia.

174. Mr. Mallia has subsequently suffered from physical and emotional manifestations of distress as approximate and actual result of Defendants' conduct.

175. As a result of Defendants' unlawful actions, Mr. Mallia has suffered injury in the form of lost income during the period of forced unemployment and lost income for future employment and is therefore entitled to recovery of aforesaid lost income, plus interest.

176. Defendants acted intentionally, maliciously and/or recklessly, thereby entitling Mr. Mallia to compensatory and/or punitive damages.

177. Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

///

///

SEVENTEENTH CAUSE OF ACTION

(VIOLATION OF FAIR LABOR STANDARDS ACT - "FLSA")

178.   The allegations of the foregoing paragraphs are incorporated herein by reference.

179.   Under the FLSA, Mr. Mallia meets the qualifications for an employee to receive tips paid to him.

180.   The FLSA is designed to eliminate "labor conditions detrimental to the maintenance of minimum standard of living necessary for health, efficiency and general well-being of workers..."   29 U.S.C. §202(a).   To achieve its goals, the FLSA sets minimum wage and overtime requirements for covered employees.   29 U.S.C. §§206(a) and 207(a).

181.   Defendants herein blatantly and knowingly, violated the FLSA by:

(a) requiring tipped employees to spend more than 20% of their time at work engaged in nontipped side work related to the tipped profession;

(b) requiring tipped employees to perform non-tipped side work unrelated to the tipped profession; and

(c) failing and refusing to pay <u>any</u> tips to Mr. Mallia by keeping the tips and instead utilizing the earned tips to pay other employee wages with or simply keep the profits for itself.

182.   Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. §203(m) violates the FLSA's minimum wage provision.   See 29 U.S.C. §§203, 206. Mr. Mallia is entitled to tips Defendant misappropriated.

183.   Due to Defendants' willful violations of the FLSA, Mr. Mallia is entitled to recover from Defendants his misappropriated and unpaid tips, and any applicable overtime wages as may be applicable under the rules of FLSA, in addition to liquidated damages.

-30-

184.   Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

## EIGHTEENTH CAUSE OF ACTION

### (DISCRIMINATION IN VIOLATION OF TITLE I OF THE ADA –

### DISCRIMINATION AGAINST A UNITED STATES VETERAN)

185.   The allegations of the foregoing paragraphs are incorporated herein by reference.

186.   Mr. Mallia is a decorated United States Army and United States Marine Corps Veteran, who served his country and was honorably discharged from both branches of service.

187.   The Department of Veterans Affairs has rated Mr. Mallia at a one hundred percent (100%) disability rating, meeting all qualifications for such disability under the ADA.

188.   The ADA, 42 U.S.C. §12101, *et sq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112.

189.   The ADA prohibits employers from denying qualified individuals employment or discriminating against them for disabilities.

190.   While Mr. Mallia was employed by Drybar, Defendants were fully aware of Mr. Mallia's United States Veteran disability status, even prior to Defendants' offer of employment to Mr. Mallia.

191.   Drybar is a covered employer to which the ADA applies.

192.    Defendants terminated Mr. Mallia from employment almost solely as a result of Mr. Mallia's disability as a veteran.   Defendants made no individualized assessment to determine whether Mr. Mallia could perform the functions they were requiring of his position, nor did they cooperate when offered a reasonable alternative to reasonably accommodate Mr. Mallia which would enable him to be employed by Drybar, as is required under the ADA.

193.    Defendants' violated their own policies and procedures when they formally "wrote-up" Mr. Mallia for leaving the "bar unattended" as a direct result of an injury, which was caused by Drybar's direct failure and refusal to offer Mr. Mallia reasonable accommodation after they required Mr. Mallia to physically go pick-up liquor for Drybar, which easily could have been, and frankly, should have been delivered instead.

194.    Defendants' termination of Mr. Mallia violated the ADA.

195.    Defendants acted intentionally, maliciously and/or recklessly, thereby entitling Mr. Mallia to compensatory and/or punitive damages.

196.    Mr. Mallia has been required to engage the services of counsel to prosecute this action and, as such, Mr. Mallia is entitled to an award of reasonable attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court grant the following relief:

(a)    Grant judgment in favor of Plaintiff and declare that Defendants have violated Title I of the ADA, 42 U.S.C. §§12111-12117, and its accompanying regulation;

(b)    Award Plaintiff for his past and future loss of wages and benefits in an amount to be proven at trial but no less than $500,000.00, plus interest;

(c)    Award Plaintiff his reasonable attorneys' fees, expenses, and costs, pursuant to 42 U.S.C. §12205 and 42 U.S.C. §2000e(5);

(d)    Find for Plaintiff that Defendants have intentionally discriminated against Plaintiff due to his disability, that they failed to provide reasonable

accommodations and engage in good faith, and that they retaliated against Plaintiff by termination of his employment with the company;

(e) Find for Plaintiff that Defendants have intentionally discriminated against Plaintiff as a one hundred percent (100%) rated disabled United States Veteran;

(f) Enjoin Defendants, its officers, successors, assigns and all persons from engaging in unlawful employment practices against individuals with disabilities;

(g) Provide sufficient remedial relief to make the Plaintiff whole for the individual losses he has suffered as a result of the discrimination against him, and any other appropriate non-discriminatory measure to overcome the effects of the discrimination he has endured;

(h) Award compensatory and punitive damages to Plaintiff to fully compensate him for injuries caused by Defendants' conduct and intent, pursuant to and within the statutory limitations of 42 U.S.C. §1981(b)(2) & (3)(A) OR (3)(B);

(i) Award Mr. Mallia all unpaid wages or overtime wages or misappropriated tips under FLSA;

(j) Award Plaintiff an equitable remedy for the retaliation Plaintiff faced at the hands of Defendants;

(k) Order Defendants to train its managers and staff regarding the requirements of the ADA; and

(l) Grant damages and further relief as may be deemed just and proper under the circumstances.

///

///

///

///

## JURY DEMAND

The Plaintiff hereby respectfully requests a trial by jury on all questions of fact raised by his *Complaint*.

Executed this 30th day of January 2019 at the City of Las Vegas, County of Clark, State of Nevada.

*RESPECTFULLY SUBMITTED:*
ELLSWORTH & BENNION, CHTD.

By:
Keen L. Ellsworth, Esq.
Nevada Bar No. 4981
777 N Rainbow Blvd., Ste 380
Las Vegas, NV 89107-1188
Telephone: (702) 767-9987
Facsimile: (702) 920-9871
Email: wynter@silverstatelaw.com
*Counsel for Plaintiff*

## VERIFICATION

STATE OF NEVADA        )
                       ) ss.
COUNTY OF CLARK        )

I, SALVATORE MALLIA, JR., individually, being first duly sworn, depose and state:

I am the Plaintiff herein in the above-entitled action; that I have read the foregoing *Complaint* and know the contents thereof; that the same is true of my own knowledge except for those matters therein stated on information and belief, and as to those matters, I believe them to be true.

Executed this 30th day of January 2019 at the City of Las Vegas, County of Clark, State of Nevada.

Salvatore Mallia, Jr.

SUBSCRIBED AND SWORN to before me
by Salvatore Mallia, Jr., this 30th day of January 2019.                    [Notary Stamp]

By:
NOTARY PUBLIC, IN AND FOR SAID COUNTY AND STATE

WYNTER SPENCER
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 12-6691-1
My Appt. Expires Jan. 7, 2020

-35-

# EXHIBIT "1"

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: **Salvatore Mallia, Jr.**<br>c/o ELLSWORTH & BENNION, CHTD.<br>Attn: Keen Ellsworth, Esq.<br>777 N. Rainbow Blvd., Ste. 270<br>Las Vegas, NV 89107 | From: **Las Vegas Local Office**<br>333 Las Vegas Blvd South<br>Suite 5560<br>Las Vegas, NV 89101 |

|  ☐  | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 487-2018-00648 | **Brian Gorecki,**<br>**Investigator** | **(702) 388-5099** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| | |
|---|---|
| ☒ | More than 180 days have passed since the filing of this charge. |
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| ☒ | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| ☒ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Wendy K. Martin,**
**Local Office Director**

NOV 0 1 2018

*(Date Mailed)*

Enclosures(s)

cc: **DRYBAR HOLDINGS, LLC**
c/o Payne & Fears LLC
Attn: Matthew Durham
6385 S. Rainbow Blvd., Suite 220
Las Vegas, NV 89118

SM00001

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

SM00003